I think the order should be affirmed without costs.

Order affirmed, without costs, on the ground that the motion was unnecessary and improper.

---

## WILLIAMS *a.* BARNAMAN.

*Supreme Court, Eighth District; General Term, May,* 1865.

ATTACHMENT IN JUSTICE'S COURT.—DEFECTIVE RETURN.—JURIS-
DICTION.—ATTACHMENT BOND.

A statement in an affidavit that the defendant is justly indebted to the plaintiff on a demand arising upon keeping his horses,—*Held,* to be a sufficient statement that the demand is one "arising upon contract, express or implied," within the meaning of the statute (2 *Rev. Stat.*, 273 ; 3 ed., 462, § 216), to sustain an attachment. It is sufficient that the affidavit tends to establish such a demand.

Under the Non-imprisonment Act, a bond by the plaintiff with one surety is sufficient to warrant the issuing of an attachment.

Where the body of the attachment-bond wholly omitted the name of the surety, but the bond was plainly subscribed by him for the purpose of becoming surety, and the justice approved of him as " the security in the bond,"--*Held,* a sufficient signing by the surety to render the bond valid.

Where the constable fails to state in his written return the date of the service of the attachment, and to date his return, these data may be supplied from other facts in the proceedings.

Where a constable fails to state in his written return that he left a copy of the inventory and attachment with the person *in whose possession* the property attached was at the time of the service of the attachment, the omission is fatal to any judgment upon such attachment, whether it is questioned on appeal or collaterally, and no other evidence of that fact can be admitted to sustain such judgment.

A statement that a copy of the inventory and attachment were "left with B.'s wife, as B. cannot be found in this county," is a sufficient statement that B. was not personally served.

Appeal from an order at special term, denying a new trial.*

This action was brought to recover the value of a team of horses alleged to have been converted by defendant to his own use. The answer alleged that prior to the commencement of this action, the defendant, by process of attachment issued at his instance by a justice of the peace of Niagara county, against the plaintiff in this action and others, as non-residents of said county, had caused the plaintiff's team to be attached; and pursuant to an execution issued upon the judgment rendered in that proceeding by the justice of the peace, the team was sold, and purchased by the defendant on such sale; and averred that such seizure and sale were a bar to this action.

On the trial there was a conflict of evidence upon the point whether a demand was made by the plaintiff for the return of the team prior to the commencement of the attachment proceeding, and the jury found against the plaintiff. The principal questions grew out of the regularity of the proceedings before the justice in the attachment-suit.

The defendant called Solomon S. McMerrick, the constable who served the attachment, and examined him as a witness, who testified that he "was a constable in 1862; he had this attachment; attached a pair of horses at Martinsville; they were in Barnaman's barn; he was not at home; one of his sons and his wife were there; he left a copy of attachment and inventory with her the same day the attachment was issued, and returned it to the justice: that he served summons the 5th of June;

---

* A previous decision is reported in 18 *Ante,* 158.

could not find either of defendants in the county, and he returned it to the justice. The execution shown me was issued and delivered to me. Advertised horses for sale under it, and sold them."

The evidence relative to the service of the attachment and the return thereof to the justice, given by this witness, was duly objected to by plaintiff's counsel, on the grounds that it must appear by the return of the officer on the attachment that the requirements of the statute were complied with; and that parol evidence is inadmissible to prove the facts necessary to confer jurisdiction on the justice if the written return does not confer jurisdiction.

Which objection was overruled by the court, and plaintiff's counsel duly excepted.

The defendant then read in evidence the affidavit upon which the justice issued the attachment, as follows :

NIAGARA COUNTY.—ss.

Martin Barnaman, being duly sworn, deposes and saith, that James Williams and Samuel Peters are justly indebted to this deponent, on a demand arising upon keeping their horses, in the sum of thirty dollars, as near as this deponent can estimate the same, over and above all discounts the said James Williams and Samuel Peters has against him; that the said James Williams and Samuel Peters are non-residents of said county, and that no warrant can issue in this case.

MARTIN BARNAMAN.

Subscribed and sworn to before me,
this 2d day of June, 1862,
PETER GREINER, Justice of the Peace.

To the reading and reception of which in evidence plaintiff's counsel objected :—That the affidavit did not fulfil the requirements of the statute, and was insufficient to authorize the justice to issue an attachment; for the reasons, 1st, That it does not show that the affiants' demand arose upon contract; 2d, That it does not state that the demand is not for the recovery of money collected by a public officer, or, &c., as required by section 30 of chapter 300, Laws of 1831.

Which objections were overruled by the court, and plaintiff's counsel duly excepted.

The bond given by defendant on the issuance of the attachment was objected to on the grounds, 1st, That it was void, there being no surety in it; and 2d, that if the name of C. S. Hawley, signed at the bottom, is to be regarded as a surety, then it is equally void, as the statute requires *sureties* instead of surety.

There was no name in the body of the bond except that of the defendant in this action, whose name was signed to it. There was the name of C. S. Hawley also signed to it, but it was questioned whether he signed it as a surety or witness.

The defendant then read in evidence the attachment issued by the justice, with the constable's return of service thereon, which return was as follows:

" By virtue of the within attachment, I have seized and taken the following property—one span of bay horses or ponies; and made and left a copy of the said attachment with Barnaman's wife at Martinsville, as the defendants cannot be found in this county.

S. S. McMERRICK, Const." -

.To the reading of which in evidence plaintiff's counsel objected:

1st, That the constable's return was insufficient in this: that it does not show that a copy of the attachment and inventory of the property attached were left with the person in whose possession the property attached was at the time of the service of the attachment.

2d, That the return does not show when the attachment was served.

3d, That the return does not state that the attachment was not personally served on the defendants.

Which objections were severally overruled by the court, and plaintiff's counsel duly excepted.

The defendant proved the recovery of a judgment in said action, and the sale of the team by virtue of an execution issued thereon; and the jury rendered a verdict for the defendant.

The plaintiff moved at special term for a new trial on a case with exceptions, which motion was denied. The following opinion was delivered by the justice who denied the motion, at Erie special term, November, 1864.

The motion was argued by

*Geo. W. Cothran*, for plaintiff.

*L. L. Lewis*, for defendant.

DANIELS, J.—The plaintiff moves for a new trial in this cause upon the ground that the verdict of the jury is against evidence, and also that certain rulings of the court as to the admission and effect of evidence given by the defendant were erroneous.

The action was brought to recover for the wrongful conversion of property seized and sold under attachment proceedings instituted in favor of the defendant against the plaintiff and another, before a justice of the peace in Niagara county, on the ground that the defendants in those proceedings were not residents of that county. Upon the trial, the principal question of fact litigated was whether a demand of the property was made by the plaintiff before the attachment-suit was commenced. On that the evidence conflicted. But the preponderance in favor of the plaintiff is not so great as to justify an interference with the verdict for that reason. That was a question of fact for the consideration of the jury; and their finding cannot be disturbed, although the court might deem the conclusion they came to not as fully warranted as a different finding would have been.

The defendants relied upon the proceedings in the attachment-suit as a defence to this action; and for that purpose they were proved and read in evidence.

In the affidavit presented to the justice, and upon which the attachment was issued, the defendant swears "that James Williams and Samuel Peters are justly indebted to him on a demand arising upon keeping their horses." This is urged as being so far defective as to prevent the justice from acquiring jurisdiction.

In order to warrant the issuing of an attachment, the statute requires that the demand sued for shall be one " arising upon contract, express or implied," &c. (3 *Rev. Stat.*, 462, §§ 212–218.) While it is not specifically stated that the demand mentioned arose upon contract, there is sufficient contained in the affidavit from which that can fairly be inferred. It is stated that the defendants are " justly indebted" for " keeping their

horses." In effect, this describes a demand arising upon contract; for that is the legal import of the term "indebted." (3 *Blackstone's Com.*, 154. Matter of Denny, 2 *Hill*, 220.) It is sufficient that the affidavit tends to establish such a demand. (Miller *a*. Brinkerhoff, 4 *Denio*, 120.)

The plaintiff also claims that the bond given on the issuing of the attachment is defective for two reasons—first, that it is without a surety; and secondly, that the statute requires two sureties. The body of the bond wholly omits the name of any surety. But the name of C. S. Hawley was plainly subscribed for the purpose of becoming surety, and not for the object of witnessing the execution of it by the plaintiff in the action. The justice so regarded it, and approved of him as " the security in the bond."

The attachment was issued under the Non-imprisonment Act, which requires that a bond shall be given " with such sureties, and upon such condition, as is required in section twenty-nine" of the article of the Revised Statutes therein referred to. (3 *Rev. Stat.*, 5 ed., 463, § 217.) The section thus referred to provides that the " applicant shall execute to the defendant a bond with sufficient surety, to be approved by" the justice. (*Ib.*, 431, § 27.) The section of the Non-imprisonment Act does not require " sureties" in the bond, but such sureties as are required to justify on attachment under the previous provisions of the Revised Statutes, which do not require sureties, but " sufficient surety." This language is satisfied by one surety with the applicant, who in this case executed the bond.

The remaining objections to the proceedings arise upon the return of the constable to the attachment. He does not state when he served the attachment, and has not dated his return. But the docket of the justice shows that the attachment was returned the same day it was issued. And he also swears that such was the fact. This disposes of that objection, for the attachment as a matter of fact must necessarily have been served a sufficient time before the return-day to constitute a compliance with the terms of the statute, as it was returned served to the justice the same day it was issued. But if that had not appeared as a matter of fact, it is at least doubtful whether the objection could now be maintained against the validity of the

proceedings. (Hoose *a.* Sherrill, 16 *Wend.*, 34; Bromley *a.* Smith, 2 *Hill*, 517.)

The constable, in his return to the attachment, states that he "left a copy of the attachment with Barnaman's wife at Martinsville, as the defendants cannot be found in this county." He does not certify that he found the property in her possession, or that he delivered to her an inventory of the property attached. In these respects the return is defective, but whether fatally so when the objection is made against the use of the proceedings in another action, is not entirely clear.

The Non-imprisonment Act requires the return, " in addition to what is now required," to "state specifically whether such copy [of the attachment] was or was not personally served." (3 *Rev. Stat.*, 5 ed., 463, § 218.) This does sufficiently appear from the return made, although it is not so declared in words. It is shown argumentatively. For as the defendants could not be found in the county, personal service of the attachment could not be made upon them. (VanKirk *a.* Wilds, 11 *Barb.*, 524–5; Rosenfield *a.* Howard, 15 *Barb.*, 546.)

As it was not personally served, and the defendants were not residents of the county of Niagara, it was the officer's duty to leave a copy of the attachment, and of the inventory of the property seized under it, "with the person in whose possession" he found the property. (3 *Rev. Stat.*, 5 ed., 431, § 29.) He is also required to make "a return of all his proceedings in writing, subscribed by him, with a copy of the inventory of the goods attached, certified by him." *(Ib.*, 432, § 33.)

This makes it his duty to state in his return, where such is the fact, that he did leave a copy of the inventory and a copy of the attachment with the person in whose possession he found the property. But the statement of these matters in the return of the officer does not seem to be required as the foundation of any subsequent proceedings on the part of the justice, or on the part of the plaintiff in the action. For the summons, which is the next step in the action, is to be issued when it appears " by the return that property was attached, and that a copy of such inventory and attachment was not personally served." (3 *Rev. Stat.*, 5 ed., 463, § 220.) If the defendant does not appear, and those matters are shown by the return, it is the duty of the justice to issue the summons; and if that is returned, "that the

defendant cannot be found after diligent inquiry," " then the justice shall proceed to hear and determine the cause." (*Ib.*)

It will be seen, therefore, from this examination of the statute, that while the officer is required to return all his proceedings, the subsequent action of the justice is made to depend entirely upon two circumstances which must be shown in the return. Those are the attachment of property and the failure to make personal service of the process upon the defendant. The object of the statute in requiring the officer to return the other proceedings taken by him under the attachment, must therefore be to supply evidence, under his hand and official oath, that in all the other particulars its terms have been complied with. For as the return, in other respects than those mentioned, does not constitute the foundation of further proceedings in the action, it merely supplies evidence that the directions of the statute as to the service of the process have been all observed. If the statute required that the justice should have evidence before him, in the constable's return, that a copy of the attachment and inventory had been left with the person in whose possession the property was found, before he could proceed further with the action, then it would become a matter of jurisdiction, rendering his proceedings without such evidence a nullity. But as it does not, such evidence is only important to show that the service made was in all respects regular. Where the return of the officer is defective in these respects, the judgment would undoubtedly be reversed upon appeal ; for by the express terms of the statute the appeal must be heard upon the return of the justice. There is no way of supplying the defects by proof. But where the effect of the proceedings is drawn collaterally into consideration, the question of jurisdiction becomes to some extent one of fact, which in many instances must in some measure be determined by evidence. It is not to be supposed that such evidence can be supplied where the law requires a written affidavit of certain facts, or a return in writing of certain matters, as the foundation of the proceeding to be taken ; but only where the matters which it is the duty of the officer to return are of a collateral nature, constituting evidence of the regularity of the service as distinguished from that which is indispensable to the exercise of jurisdiction. Even in those matters, if the officer certifies them in his return, that is gen-

erally conclusive between the parties. It " becomes evidence which the law will not allow to be contradicted. But where that evidence is not furnished by the return, there does not appear to be any well-founded objection to proving it as a fact, where it becomes proper to do so, for the purpose of sustaining the validity of the proceedings." Such seems to have been the opinion of BRONSON, J., in the case of Barnes *a.* Harris (4 *Comst.*, 385), and of ALLEN, J., in Reno *a.* Pindar (20 *N. Y.*, 304).

If the justice's proceedings can be maintained without it, then the evidence can do no harm. For it is an error that could not by possibility work an injury to the plaintiff.

The return of the officer on the summons fully complied with the statute. And the additional evidence given by him as a witness, showing its correctness as a matter of fact, though not proper, could do no possible harm to the plaintiff.

The evidence given by the constable showed a proper service of the inventory and copy-attachment upon Barnaman's wife. For that purpose she must be deemed to have the possession of the property kept in her husband's stable, when he is absent from home, as he was in this case. He was an innkeeper, and she is to be presumed to have charge of his affairs and control of his household during his absence : particularly as no other person was shown to be about the premises actually invested with such charge and control, besides her. (See cases cited in note 69, part 2, *Cow. & Hill's Notes*, 75.)

The motion for a new trial must be denied.

The plaintiff appealed to the general term from the order entered pursuant to the foregoing opinion, and from the judgment entered on the verdict, which appeals were heard at Erie general term, February, 1865.

*Geo. W. Cothran*, for the plaintiff.—I. The constable's return on the attachment is insufficient to confer jurisdiction. 1. It does not show that a certified copy of the attachment was left with the person in whose possession the property was found. 2. It does not show that a certified copy of the inventory of the attached property was left with the party in possession of

the property. 3. It does not show who was in possession of the property.

The justice's jurisdiction is, by the statute, made to depend upon the fact that these things appear by the officer's return. (See opinion of thê court in same case on former motion for new trial, 18 *Abbotts' Pr.*, 158.) The meaning of the statute is, that if at the return-day it shall appear by the return that the attachment has been executed as required by sections 36 and 33 of the Non-imprisonment Act (3 *Rev. Stat.*, 5 ed., 462, §§ 215-463, 218) the summons may be taken out. To constitute a valid execution of an attachment under this act, the constable is required—1. If the defendant have a place of residence in the county, he shall leave a certified copy of the property attached at such residence ; or, if the defendant have no place of residence in the county, such copies shall be left with the person in whose possession the property is found ; but, 2. If the defendant can be found in the county, such copies shall be served on him personally, instead of leaving the same at his residence ; 3. And he shall return all his proceedings in writing, subscribed by him (3 *Rev. Stat.*, 432, § 33); and in addition thereto shall state specifically whether such copies were or were not personally served.

Therefore, when the statute declares that " if it shall appear by the return," &c., " that a copy of such inventory and attachment was not personally served," it means, if it shall appear by the return that property has been attached, and that a certified copy of the attachment and inventory were left either, first, at the defendant's place of residence in the county, or, second, with the person in whose possession the property was found, &c., the plaintiff may take out a summons.

Reduced to practice, the result of the decision at special term would be : A justice issues an attachment ; the constable, without notifying anybody, would seize property and return that he had seized it, and that he had not personally served the attachment and inventory ; a summons would thereupon issue, judgment be rendered, and the defendant be deprived of his property, not only without due process of law, but without the opportunity of a trial, unless by accident he should learn of the proceedings and appear. Such a law as this no Legislature would have the constitutional power to enact ; and

yet this is the practical effect of this statute, if the construction at special term is correct.

*a.* This proceeding (before the justice) is an action. And it is not only, the intention of this act, but the whole policy of the law requires, that when an action is instituted, the original process shall be personally served on the defendant; or such other mode of service as the particular statute designates as a substitute for personal service shall be made, before the court acquires jurisdiction for any purpose.

Section 38 no more requires the officer to return a copy of his inventory than it does that he state the manner of service of the attachment; and yet it will not be contended but that the return of a copy of the inventory is not only required, but is indispensable to the justice's jurisdiction over the attached property. (3 *Rev. Stat.*, 432, § 33.)

*b.* It is provided in section 36 that " the return of said officer, in addition to what is now provided, shall state specifically whether such copy was or was not personally served upon the defendant."

The above provision is wholly ignored in this return. The statute does not merely require the specific fact, whether the attachment was or was not personally served, to appear by the return, but it requires that the fact whether it was or was not personally served shall appear specifically. Nothing less than a positive, unequivocal statement will be a compliance with this requirement.

*c.* It is just as much a jurisdictional question that the copy inventory and attachment shall be left at the defendant's place of residence, or with the person in possession of the property, as it is that a summons shall issue. And that both of these means are resorted to to apprize the defendant that his property has been seized, is the mode the law has pointed out of bringing the defendant, in so far as his property is concerned, within the jurisdiction and control of the court.

The seizure of the property alone brings it within the custody of the officer, subject to the order of the court, but the seizure alone does not authorize the court to proceed to sell it. And before the court can proceed to give judgment, the defendant is not only to be *summoned* to appear, but he must be served with the attachment and inventory in one of the modes pro-

vided. That when personally served, that fact should specifically appear by the return, is important; for in case of personal service, to issue a summons would result in the justice losing jurisdiction, and render his judgment void. (Marshall a. Canty, 14 *Abbotts' Pr.*, 237.)

II. 1. It is solely upon and by virtue of the constable's return of service of the attachment that the justice acquires jurisdiction. In so far as the mere question of jurisdiction is concerned, it is wholly immaterial whether, in fact, the attachment was served at all, so long as the officer's return shows on its face a proper service. The justice is not at liberty to inquire into its truthfulness or falsity, but is bound by it, and by it alone. He can avail himself of no other source of information, save the voluntary appearance, or waiver, of the defendant. When the return shows a proper service, he is bound to act; and when it does not show a legal service, if he acts, his acts are unauthorized. Proof of service of original process is for the sole purpose of conferring jurisdiction. It is the *proof* of service, and not the *service*, that authorizes the justice to act. If the written return of the officer making it did not show a legal service, the justice could not act. Nor would it be competent for him to put the officer on the witness-stand and allow him to testify to the service. To comply with the statute, there must be a *return* of the service made by the officer and subscribed by him, or his name may be subscribed by another at his request. (Reno a. Pindar, 20 *N. Y.*, 304.)

2. The court says that when a judgment is collaterally attacked, the question of jurisdiction is to some extent a question of fact. It was rather a question of law, arising upon the proofs upon which the justice acted in rendering it. If, as a matter of law, the justice had no jurisdiction, his judgment is void; and whether he had or had not jurisdiction is to be determined *solely* upon the evidence upon which the justice acted. If it be not competent for the justice, at the trial or on the return of the attachment, to put the officer on the stand and allow him to testify to the service, it most assuredly could not be competent to call him for that purpose years after the rendition of the judgment in another action. Had the officer been prosecuted for making a false return, he would not be permitted to vary or contradict the return as made.

3. In permitting the constable to come upon the stand on the trial of this action and testify to a proper service, the court erred, for the reasons: 1st. Jurisdiction was conferred on the justice, if at all, by the officer's *return* on the attachment, and not by the *fact of service*. 2d. The return or proof of service upon which the justice was alone authorized to act, must be in writing. 3d. The evidence only tends to establish, by oral testimony, the *fact* that a proper service was made. 4th. It does not show that that fact was brought to the knowledge of the justice at the time of issuing the summons, in a manner that was susceptible of judicial cognizance. 5th. It does not show the justice had any knowledge of any different service than such as appears by the written return. 6th. The question of jurisdiction is exclusively a question of law, and not of fact. 7th. The constable is estopped from showing any different service from that shown in his return, after the plaintiff having treated his written return as insufficient, and brought this action predicated upon that insufficiency. It would be a fraud upon the plaintiff, who, having his election to appeal or sue for the value of his property, has elected to sue. 8th. It is contrary alike to public policy and to the spirit of the statute to prevent frauds and perjuries, for it is permitting to be proved by parol what the statute requires to be in writing.

4. The ruling of the justice in receiving this testimony was erroneous, tested by the statute (3 *Rev. Stat.*, 432, § 33); was erroneous upon general principles, and is unsupported by authority. (Brown *a.* Cady, 19 *Wend.*, 477; Barnes *a.* Harris, 4 *Com.*, 374; Reno *a.* Pindar, 20 *N. Y.*, 304.)

*L. L. Lewis*, for defendant, relied upon the opinions at special term, given above.

By THE COURT.—GROVER, P. J.—The motion for a new trial, upon the ground that the verdict was against evidence, was properly denied. The only material question of fact litigated upon the trial was, whether the plaintiff demanded the horses of the defendant before they were seized by the constable upon the attachment. Upon this the evidence was conflicting, and there was no such preponderance against the verdict as to justify setting it aside upon that ground.

Numerous exceptions were taken to the ruling of the judge in regard to the validity of the attachment, the proceedings preliminary to its issue, and the intermediate proceedings to the judgment rendered by the justice. I shall only examine the exception relating to the return made by the constable, of the service of the attachment, as I think it clear that all the others were correctly .decided by the judge at special term, for the reasons assigned in the opinion there given,—except the one in question, and that relating to the proof given upon the trial, in aid of the return, of what the constable in fact did in serving the attachment. The return is as follows : " By virtue of the within attachment, I have seized and taken the following property—one span of bay horses or ponies ; and made and left a copy of the said attachment with Barnaman's wife at Martins-ville, as the defendant cannot be found in this county."

The attachment was issued under the provisions of the Non-imprisonment Act. The 36th section of that act provides that every attachment issued pursuant to its provisions shall be served in the manner provided for the service of attachments issued pursuant to the provisions of the Revised Statutes ; except that if the defendant can be found in the county, the copy of such attachment and inventory shall be served upon him personally, instead of leaving the same at the place provided by such statute. This return showed sufficiently clearly that the attachment had not been personally served, as it could be legally served in the county only, and the return states that the defendant could not be found therein.

The Revised Statutes (2 *Rev. Stat.*, 231, § 31) provide that the copy of attachment and inventory duly certified must be left at the defendant's last place of residence ; or, if he had no place of residence in the county, with the person in whose possession the goods are found. ·

In this case the defendant not being found in the county, and having no place of residence therein, the law requires that the copy of attachment and inventory should be left with the person in whose possession the goods were found. This the return failed to show. By no intendment can it be understood that Mrs. Barnaman had any possession or control of the property attached, or had any thing to do with it.

The opinion of the learned justice at special term concedes

that the return is defective in this particular, but the judge arrives at the conclusion that these matters need not be stated as the foundation of further proceedings by the justice. This conclusion is based upon the clause of the statute which provides that when it shall appear by the return that the property has been attached, and that a copy of the inventory and attachment were not personally served, and the defendant fails to appear, the justice shall issue a summons, &c. That all the above requisites did appear from the return in this case; and, therefore, it was held that the justice's proceedings were valid, and constituted a defence to this action.

I am unable to bring my mind to assent to this conclusion. I think the true meaning of its "appearing from the return that property had been attached," is, that the attachment had been served in the manner required by law. In other words, that, in a legal sense, property is not attached until all the acts have been done by the officer required by law to constitute a service of the attachment. Should a constable simply seize property by virtue of an attachment, and do nothing further by way of completing the service, or attempt to complete it, I think he could not justify detaining the property seized.

This construction secures and effectuates the evident design of the Legislature in requiring the service of the inventory and copy of attachment, while the rule adopted at the special term defeats it. That design was to bring notice of the proceedings to the defendant, to enable him to defend against them.

It follows, that the return made by the officer did not justify further proceedings by the justice.

To obviate the difficulty, proof was given by the defendant showing that, in point of fact, the person with whom the inventory and copy of attachment were left had in fact the possession of the property at the time of service. I think the plaintiff's exception to this proof was well taken.

The statute requires the officer to return his proceedings in writing. The authority of the justice depends alone upon this return. He is not authorized to receive any other proofs of the facts. When the proceedings are called in question in any other court, they must be determined by the facts appearing before the justice. No one will question but that this is so

upon an appeal from the judgment.   If not so when called in question collaterally in another court, it would present the anomaly of sustaining the judgment upon facts into which the justice had no right to inquire, and upon evidence that he was not authorized to receive.   Such a rule would lead to much difficulty in determining whether justices' judgments were valid or not.   The true rule prevents all difficulty by determining the question by the proceedings before the justice.

The judgment and order appealed from should be reversed, and a new trial ordered, costs to abide event.

MARVIN, J., concurred.

DANIELS, J., dissented.

---

BOWMAN a. TALLMAN.

*New York Superior Court ; General Term, November*, 1864.

MOTION AGAINST IRREGULARITY.—LACHES.—ENTRY OF JUDGMENT ON APPEAL.—STAY OF PROCEEDINGS.

A stay of proceedings for the purposes of an appeal is not removed, so as to enable the respondent to issue execution upon the judgment appealed from, by a decision of the appeal announced orally and entered in the minutes.   To supersede the stay there must be a formal judgment entered by the clerk.

But the issue of an execution after such decision entered on the minutes, and before the entry of a judgment, is a mere irregularity.

A motion to vacate it must be made promptly.   Where after the levy of the execution upon defendant's property the judgment was entered, and defendant appealed from it to the Court of Appeals,—*Held*, that a motion made several months subsequently was too late.

Appeal from an order setting aside an execution and levy thereof.

The plaintiff, George Bowman, recovered judgment against the defendant, William M. Tallman, in February, 1864.